UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
FILED: 4/26/2024
```

UNITED STATES OF AMERICA,

22-CR-534-01 (CM)

-v-

LEROY GIBBS,

Defendant.

DECISION AND ORDER DENYING SENTENCE REDUCTION PURSUANT TO
AMENDMENT 821 OF THE UNITED STATES SENTENCING GUIDELINES MANUAL

McMahon, J.:

On February 8, 2023, Leroy Gibbs was sentenced principally to a term of imprisonment of 33 months, a supervised release term of 3 years, and a fine of $100,000, for receiving bribes while working for the New York City Housing Authority. Gibb's sentencing guidelines range was 27-33 months' imprisonment, based on an offense level of 18 and criminal history category of I.

The Bureau of Prisons projects that Gibbs will be released from prison on October 29, 2024.

The United States Probation Department has conducted of review of defendants who are currently incarcerated and who might be eligible for a sentencing reduction, pursuant to Amendment 821 to the United States Sentencing Guidelines Manual. Amendment 821 amended the Guidelines in two respects: (1) Part A amends Guidelines § 4A1.1, by reducing from two points to one point the upward adjustment for offenders who committed the instant offense while under any criminal sentence, and by limiting this adjustment to defendants who received seven (7) or more criminal history points; and (2) Part B, amends Guidelines § 4C1.1, by providing a

1

2-level offense level reduction for offenders with zero (0) criminal history points who meet specified eligibility criteria. The Sentencing Commission made these amendments retroactive effective November 1, 2023.

The Probation Department has determined that Gibbs is eligible for the 2-level offense level reduction for offenders with zero (0) criminal history points. Probation has determined that Gibbs's revised sentencing guidelines range is now 21-27 months' imprisonment, based on an offense level of 16 (applying the 2-level reduction) and criminal history category of I. Probation also reports that Gibbs has not received any disciplinary infractions while in custody.

The Court finds that Gibbs is eligible for a sentence reduction and adopts the above calculations as his now applicable Guidelines range.

Notwithstanding Gibb's eligibility for a sentencing reduction of up to 12-months, the Court declines—in an exercise of its discretion—to reduce his sentence.

The Court has considered anew all of the § 3553(a) factors that it originally considered at sentencing; principal among those considerations in this case are "the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed—(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense" 18 U.S.C. § 3553(a)(1), (2) (A).

Leroy Gibbs was a corrupt public employee. He abused his position as a Resident Buildings Superintendent at the Douglass Houses, a New York City Housing Authority ("NYCHA") housing development, in order to enrich himself. As superintendent, Gibbs was involved in awarding construction and repair jobs to contractors seeking to be hired for work at NYCHA properties; in fact, for jobs that were less than $10,000, Gibbs played a central role in hiring contractors, because those contracts did not need to be submitted for competitive bidding.

2

(PSR ¶ 10.) However, rather than honestly awarding work to contractors on an even footing, Gibbs demanded and took bribes from contractors who sought to be hired.

The Government became aware of Gibb's illegal conduct in 2019 and set up a sting operation to catch him in the act. Gibbs solicited bribes from a contractor working for the Government as a confidential informant (the "CI"), between September 2019 and February 2020, in exchange for awarding the CI several no-bid contracts from NYCHA. Although Gibbs took only $2,000 in bribes from the CI, he deposited large amounts of cash into his bank accounts since at least January 2015; in total, he deposited approximately $598,000 in cash into two accounts between January 2015 and February 2022. (PSR ¶ 15). Gibbs attempted to explain this extraordinary amount of cash to the Probation Office as income from "cash businesses, which included, landscaping, drywall professional, boiler installation, and a towel cleaning service" (although the PSR does not note any corroboration for this beyond the defendant's bare assertion). (PSR ¶ 62.). However, Gibbs's own text messages show, *inter alia*, that Gibbs demanded and received cash bribes from numerous other contractors besides the CI between at least 2019 and 2022.

The Court terminated the first sentencing proceeding when it became suspicious that Gibbs had lied to Probation about the source of the money in his accounts. A suspicion confirmed by the Chief of Probation and noted by the Court when sentencing resumed some weeks later:

> Just so that everything is on the table, after our last session, I called the chief of probation for this district. And I said to him, we suspended a sentencing today because I was concerned that I didn't have the whole story about Mr. Gibbs and the extent of his misconduct. And I said one of the things that I am concerned about is whether Mr. Gibbs lied to the probation officer by telling the probation officer that a rather large sum of money, at least some of which we now all agree was obtained illegally, was the fruits of his honest labor in connection with his businesses. And

3

> the chief of probation has spoken to the probation officer and has advised
> me that the probation officer was indeed lied to. And I want that on the
> record. So here we are, and Let's pick up where we left off . . . .

Continued Sentencing Proceeding, ECF Doc. 30 at 3.

To afford Gibb's the benefit provided for in Amendment 821 for defendants who had zero criminal history points at the time of sentencing would be wholly inappropriate here since Gibbs had been committing crimes as part of his bribe receiving scheme for years—and I said as much at sentencing:

> The total offense level is 18. And a criminal history category of I. The I
> significantly find significantly understates your criminal history. You have
> been committing crimes for years. All your criminal history proves is that
> you didn't get caught. You are a serial criminal. I wouldn't think of
> criminal history category VI, the highest category, was an incorrect
> calculation because this is your way of doing business. And it has been for
> a long time.
>
> \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
>
> There is a need for a sentence in this case to reflect the seriousness of the
> crime. There is a need for the sentence in this case to deter you because,
> frankly, I think that criminality is so deeply engrained in you by what
> you've proved in the last month that nothing less than a sentence of serious
> incarceration can possibly make a dent on your thinking on this subject of
> what is right and what is wrong, what is acceptable and what is not. That's
> specific deterrence. Then there's general deterrence. This is exactly the
> type of crime that cries out for a message to be sent that if you engage in
> this kind of behavior, if you betray the public trust, if you take bribes and
> shake people down, that there are serious consequences to be paid.

Continued Sentencing Proceeding, ECF Doc. 30 at 13-15.

Nothing that has changed since Gibb's sentencing—not the lowering of his Guidelines calculation, nor his apparent good behavior while incarcerated—alters the Court's belief that the appropriate sentencing in this case was—and should remain—33 months' imprisonment.[1]

This constitutes the decision and order of the Court.

---

[1] With his release set for October 2024, Gibbs will soon be released into the BOP community supervision program (which often allows inmates to be supervised in their own home).

Colleen McMahon
United States District Judge

Dated: April 24, 2024
        New York, New York